UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RIETH-RILEY CONSTRUCTION CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> ALLIED WORLD NATIONAL ASSURANCE COMPANY *et al.*, <br><br> Defendants. | CAUSE NO. 3:24-CV-1008 DRL-SJF |

OPINION AND ORDER

Rieth-Riley Construction Co. settled a negligence lawsuit related to a motorcycle accident that occurred near one of its highway construction sites. The company now sues its two excess insurers, Allied World National Assurance Company (Allied) and Endurance American Insurance Company (called Sompo by the parties), claiming that neither will pay Rieth-Riley the final $5 million of the settlement. Rieth-Riley seeks a declaratory judgment as to which insurer must pay and claims they both breached their contract and their duty of good faith and fair dealing. Allied alone moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). The court denies the motion.

BACKGROUND

This background emerges from the operative pleading, taking the well-pleaded allegations as true. Rieth-Riley provides paving and construction services for infrastructure projects. In 2020, it subcontracted with Traffic Control Specialist, Inc. (TCS) for a project [1-4]. Reith-Riley and TCS were sued after a motorcycle accident occurred near one of Reith-Riley's construction sites.

*See Detert v. Rieth-Riley Constr. Co. et al.*, Cause No. 64D02-2106-CT-5251 (Porter Super. Ct., Ind.), In settling the negligence suit, Rieth-Riley turned to its insurers for coverage.

Rieth-Riley had several options at insurance coverage, falling into two towers as the parties sometimes cast it, issued by multiple insurers [1 ¶ 23]. Each insurer was responsible for a distinct layer of coverage up to a certain limit [*id.* ¶ 23-24]. One insurer (Travelers) provided first-layer excess coverage; Allied provided a second-layer excess liability insurance policy that followed form [1-1]; and Sompo provided another layer of excess coverage. As the first layer, Travelers was obligated to respond to Rieth-Riley's loss or liability first [1-1 at 5]. If a loss exceeded the primary excess insurer's coverage limit, Allied as the excess insurer became responsible for the remaining loss up to $15 million [1 ¶ 2, 23; 1-1 at 5-6]. If a loss exceeded the $15 million limit in Allied's policy, Sompo's final layer of excess coverage could be triggered [1 ¶ 2, 24].

TCS held its own liability coverage, including an excess policy from Allied with a $5 million limit [*id.* ¶ 19, 22]. Rieth-Riley's subcontract with TCS required TCS to insure Rieth-Riley under all its insurance policies as an additional insured [*id.* ¶ 21]. The subcontract also required TCS's insurance to be primary in coverage and exhausted before any of Rieth-Riley's insurance policies could be triggered [*id.*].

During the *Detert* settlement negotiations, the parties agreed to settle the lawsuit [*id.* ¶ 15]. Allied paid $5 million for TCS under TCS's policy and $10 million for Rieth-Riley under its excess policy, and Rieth-Riley paid $5 million more. Rieth-Riley thought the entire settlement amount, after exhausting the limits of its primary coverage, would be covered by its excess carriers [*id.* ¶ 50]. However, Allied invoked an "anti-stacking" provision in Rieth-Riley's insurance policy and contended it was only responsible for covering an excess $10 million, rather than $15 million, of

2

Rieth-Riley's settlement because Allied was also providing $5 million in coverage to TCS for the settlement of the same lawsuit [*id.* ¶ 4, 32, 50].

Rieth-Riley turned to Sompo, but Sompo refused to pay the $5 million balance arguing that its policy wasn't triggered until Rieth-Riley had exhausted its $15 million with Allied [*id.* ¶ 5, 47]. When fingers pointed in opposite directions and neither insurance company would pay, Rieth-Riley paid the $5 million overage and sued for a judicial determination of which insurer should pay and for damages for their conduct. Today only Allied wants out. Sompo waits in the wings ultimately but argues today in favor of Rieth-Riley's view of the policies. Obviously if Allied must pay, then Sompo need not under the next layer of excess coverage.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

Generally, if a party attaches evidence outside the pleadings in a motion to dismiss, "the court must either convert [the motion] into a motion for summary judgment under Rule 56…or exclude the documents attached to the motion to dismiss and continue under Rule 12." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted). There is a narrow exception: a dismissal motion can rest on critical documents, central to the claim and referred to in the complaint. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *188 LLC*, 300 F.3d at 735. The court may also consider documents attached to a plaintiff's response, so long as they are central to the claim and consistent with prior pleadings. *Defender Sec. Co. v. First Mercury Ins.*, 803 F.3d 327, 335 (7th Cir. 2015). The court thus considers the insurance policies and the subcontractor agreement attached to Rieth-Riley's complaint [1-1; 1-2; 1-3; 1-4] as well as the settlement agreement and insurance policy attached to Rieth-Riley's response to Allied's motion to dismiss [23-1; 23-2], none of which the parties dispute.

## DISCUSSION

A.  *Declaratory Judgment and Breach of Contract.*

Allied argues that the anti-stacking provisions contained in both Rieth-Riley's policy and TCS's policy set a maximum coverage limit. This maximum limit, Allied says, is determined by the highest applicable limit of liability between the two insurance policies. Here, that would be Rieth-Riley's $15 million limit. Allied contends that, because it paid $15 million total between the Rieth-Riley policy and the TCS policy already, it has met its obligations under both policies. Accordingly, Allied says Rieth-Riley cannot state a claim. Rieth-Riley (joined by Sompo) argues that the anti-stacking provisions don't apply, requiring Allied to cover Rieth-Riley up to $15 million, despite it also covering TCS for $5 million.

An insurance policy is subject to rules of contract construction. *State Farm Mut. Auto. Ins. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016); *Dunn v. Meridian Mut. Ins.*, 836 N.E.2d 249, 251 (Ind. 2005). Contractual interpretation is generally a question of law, *Song v. Iatarola*, 76 N.E.3d 926, 933 (Ind. Ct. App. 2017), controlled by the parties' intent as expressed by clear contractual language, *City of Jeffersonville v. Env't Mgmt. Corp.*, 954 N.E.2d 1000, 1008 (Ind. Ct. App. 2011). "When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning." *Erie Indem. Co. v. Est. of Harris*, 99 N.E.3d 625, 630 (Ind. 2018); *see also Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 864 (Ind. 2022); *Meridian Mut. Ins. v. Auto-Owners Ins.*, 698 N.E.2d 770, 773 (Ind. 1998).

The court interprets "policy terms from the perspective of the ordinary policyholder of average intelligence." *Ind. Farmers Mut. Ins. v. Weaver*, 120 N.E.3d 280, 284 (Ind. Ct. App. 2019); *accord Erie Indem.*, 99 N.E.3d at 630; *Frankenmuth Mut. Ins. v. Fun F/X II, Inc.*, 601 F. Supp.3d 330, 337 (N.D. Ind. 2022). The court's job is "to ascertain and enforce the parties' intent as manifested in the insurance contract," *Berkshire Hathaway Homestate Ins. v. Basham*, 113 N.E.3d 630, 634 (Ind. Ct. App. 2018), to interpret a contract "so as to harmonize its provisions, rather than place them in conflict," and to look at the contract as a whole, *Dunn*, 836 N.E.2d at 252.

A disagreement about a provision's meaning doesn't render a provision ambiguous. *G&G Oil Co. of Ind. v. Cont'l W. Ins.*, 165 N.E.3d 82, 87 (Ind. 2021). A court will only find terms ambiguous when intelligent policyholders could honestly disagree about the policy's meaning, else the court applies the plain and ordinary meaning of the policy's terms. *See id.*; *Erie Indem.*, 99 N.E.3d at 630. But if "reasonably intelligent people may interpret the policy's language differently," courts interpret an insurance contract to favor the insured to further the policy's

5

basic purpose of indemnity. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009); *see Eli Lilly & Co. v. Home Ins.*, 482 N.E.2d 467, 470 (Ind. 1985); *see also Zeller v. AAA Ins.*, 40 N.E.3d 958, 962 (Ind. Ct. App. 2015).

Generally speaking, an anti-stacking clause prevents insureds from "stacking" or combining coverage limits from multiple policies to cover a single claim or loss. Indiana law allows for the enforcement of anti-stacking provisions. *Ansert v. Ind. Farmers Mut. Ins.*, 659 N.E.2d 614, 621 (Ind. Ct. App. 1995). The deciding question today is whether the anti-stacking provisions in the excess insurance policies meant that Allied only owed Rieth-Riley $10 million total rather than the $15 million that Rieth-Riley contributed toward the *Detert* settlement.

The court starts with the text. The anti-stacking provision in Rieth-Riley's policy [1-1] reads as follows: "If this **policy** and any **other insurance** provided by one or more of our member companies apply to the same claim, suit or occurrence, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy. However, this condition will not apply if the insurance is specifically written to be excess of this **policy**." TCS's policy from Allied [1-3] contains a nearly identical anti-stacking provision: "If this policy and any **Other Insurance** provided by one or more of our member companies apply to the same claim, **Suit** or **Occurrence**, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy. However, this condition will not apply if the insurance is specifically written to be excess of this policy."

Allied says both anti-stacking provisions apply. First, it argues that the *Detert* settlement constitutes the same claim, suit, or occurrence. And second, it contends that the TCS policy

6

qualifies as "other insurance" under Rieth-Riley's anti-stacking provision, as well as in the inverse that Rieth-Riley's policy qualifies as "other insurance" under the anti-stacking provision in TCS's policy. From there, Allied argues against the exception in each anti-stacking provision—namely, that Rieth-Riley's policy wasn't specifically written to be excess of the TCS policy. Allied says the anti-stacking provisions limit the carrier's total liability to $15 million (the highest policy limit)—which it says it paid out already by way of $10 million to Rieth-Riley and $5 million to TCS.

Rieth-Riley wants the missing $5 million from its $15 million contribution to the settlement. No one disputes that the two Allied policies provide coverage for the same suit. Instead, Rieth-Riley counters that the anti-stacking provision in its excess policy doesn't apply to TCS's policy because that policy is not "other insurance," as defined. Addressing TCS's anti-stacking provision, Rieth-Riley says TCS's provision is irrelevant to Rieth-Riley's rights under its own policy with Allied. In the alternative, Rieth-Riley says its policy was specifically written to be in excess of TCS's policy such that the exception applies. Sompo agrees with Rieth-Riley on all points and adds that the policies didn't cover the same loss.

Rieth-Riley's excess policy [1-1] defines "other insurance" as "valid and collectible insurance providing coverage for **loss** that is covered in whole or in part by this **policy** (or that would be covered in whole or in part by this **policy**, but for the existence of the **underlying limits**)."[1] "[O]ther insurance does not include **underlying excess insurance**, **underlying primary insurance**, or any policy of insurance specifically purchased to be excess of this **policy** affording coverage that this **policy** also affords."

---

[1] The definition of "other insurance" in TCS's policy is nearly the same, except that it refers to "damages" rather than the defined term of "loss." The carve out language from the definition of "other insurance" is slightly different too.

7

Rieth-Riley (joined by Sompo) presents two arguments why TCS's policy is not "other insurance" under Rieth-Riley's excess policy. First, the company says TCS's policy doesn't cover the same loss (a defined term) as Rieth-Riley's policy. Second, Rieth-Riley argues that, even so, the TCS policy constitutes "underlying primary insurance" rather than "other insurance." The court addresses these two points before turning to Allied's alternative argument that the anti-stacking provision in TCS's policy likewise bars Rieth-Riley's claim.

1. *Loss.*

Rieth-Riley argues that Allied's insurance payment toward Rieth-Riley's portion of the *Detert* settlement constitutes a separate "loss" from the insurance payment Allied made toward TCS's portion of the settlement, largely because they were separate payments made pursuant to separate policies. Allied disagrees and says both policies covered the same "loss" because Rieth-Riley was covered by TCS's policy as an additional insured as well as an insured under its own policy with Allied.

Loss is defined in Rieth-Riley's policy [1-1] as "damages that the **insured** becomes legally obligated to pay because of injury or damage." Inserting the definition of "loss" within the definition of "other insurance," the question becomes whether valid and collectible insurance provided coverage for damages that the insured became legally obligated to pay (because of injury or damage) that were covered in whole or in part by Rieth-Riley's policy (or that would be covered in whole or in part by this policy but for the existence of the underlying limits). *See Buckeye State Mut. Ins. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009) (courts "construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs"). Thus, the critical inquiry is whether TCS's policy (as the other

valid and collectible insurance) provided coverage for damages that Rieth-Riley (as the insured) was legally obligated to pay and that Rieth-Riley's policy with Allied also covered.

Rieth-Riley received liability coverage for the *Detert* settlement from Allied under its policy. Indeed, Rieth-Riley pleaded that Allied contributed $10 million on its behalf. Rieth-Riley required its subcontractors, such as TCS, to add Rieth-Riley as an additional insured on their policies as well, so Rieth-Riley procured coverage from Allied as an additional insured under TCS's policy.

As a matter of pleading and now argument under the plain language of these policies, Rieth-Riley has plausibly alleged why Allied's payment of $5 million (for TCS) wasn't also for the same loss as the $10 million payment (for Rieth-Riley). The mere fact of separate payments doesn't seem to answer this question, as the policy concerns the legal obligation to pay that comes from ("because of") injury or damage. Rieth-Riley instead has the better of a plausible claim in two other steps. For one, Rieth-Riley posits a legal obligation through the settlement agreement, and Allied offers no law or other argument to view that legal obligation (underlying the definition of "loss") as one that cannot stem from a settlement. *See Salvati v. Am. Ins.*, 855 F.3d 40, 46 (1st Cir. 2017) (insurer's obligation to indemnify may be triggered by settlement agreement).

For another, the settlement agreement specified for whom this one Allied payment was made—namely, that the legal obligation of $5 million rested on TCS (not Rieth-Riley) [23-1 § 2(a)(2)]. The law often recognizes an insurer's ability to settle one insured's liability without regard to another insured's liability such that a settlement payment for one insured cannot, as a matter of law, be presumed to be a settlement payment for all insureds. Allied effectively invites the court to peer behind the settlement agreement and somehow presume that the $5 million must have really been paid for both insureds, but the court cannot look beyond the pleading (or

9

this early permitted record) and draw that conclusion. Nor has Allied presented any law that would permit or require the court to find, as a matter of law, that its payment on TCS's behalf must be presumed to be a payment for Rieth-Riley's benefit—that is, that a payment for one insured must be a payment for all insureds (including any additional insured). That Rieth-Riley may have had coverage, through both its excess policy with Allied and as an additional insured under TCS's policy with Allied, might address part of the definition of "other insurance," but that alone stops a step short of answering the question whether that coverage existed for the same "loss" as defined in Rieth-Riley's policy. At least on this record it does. Rieth-Riley presents a plausible claim, so the court must deny Allied's motion to dismiss.

   2. *Underlying Primary Insurance.*

Rieth-Riley argues that, regardless of whether the TCS policy might qualify preliminarily as "other insurance" because it covered the same loss, it plausibly pleaded that the TCS policy qualified as underlying primary insurance within the meaning of Rieth-Riley's policy—in short, that the exception to the definition of "other insurance" applies.

Allied disagrees, calling the two policies "part of entirely separate towers of insurance issued to separate insureds."[2] Rieth-Riley counters that nothing in its policy with Allied requires the underlying primary insurance to be in the same tower as the excess policy it underlies—and if anything, the policy expressly says underlying primary insurance cannot be listed in the "Schedule of Underlying Insurance." Rieth-Riley (with Sompo once more by its side) argues that

---

[2] In contrast to the first argument wherein Allied wants to treat Rieth-Riley and TCS together as insureds in characterizing its TCS-designated payment as one effectively for both companies, here Allied wants to treat the two insureds separately. This too says something about the motion.

TCS's policy qualifies as underlying primary insurance because it underlies all of Rieth-Riley's excess insurance and was not listed in the "Schedule of Underlying Insurance."

Allied replies that only insurance policies already in place and disclosed to Allied before it issued its own policy can qualify as underlying primary insurance. This, according to Allied, would have been impossible for Rieth-Riley to do with TCS's policy because Rieth-Riley was added as an additional insured six months after Allied issued its policy to Rieth-Riley. For support, Allied relies on Section V.H. of Rieth-Riley's policy, which describes Rieth-Riley's responsibilities to maintain its underlying insurance. Allied further contends that, if Rieth-Riley's interpretation of underlying primary insurance were correct, it would yield unintended results.

The court gives plain and ordinary meaning to a policy's clear language. *Meridian Mut. Ins.*, 698 N.E.2d at 773; *Ebert*, 188 N.E.3d at 864. Rieth-Riley's policy excludes underlying primary insurance policies from its definition of "other insurance," no matter whether it might otherwise qualify initially. Underlying primary insurance is defined as "any insurance (including the next applicable renewal or replacement, or any applicable antecedent, thereof) that underlies the **underlying excess insurance**" and "does not include insurance that is described in the Schedule [of] Underlying Insurance of [Rieth-Riley's] **policy**." Underlying excess insurance is defined as the "insurance described in the Schedule [of] Underlying Insurance of [Rieth-Riley's] **policy** as well as the next applicable renewal or replacement, or any applicable antecedent, of the described insurance." The term "underlies" is not defined by Rieth-Riley's policy, leaving the court to apply its plain and ordinary meaning—something underneath or foundational in priority that must be paid out first. *See Underlie*, Oxford English Dictionary sense 3.b (last visited Sept. 26, 2025) ("Of a quality, state, relationship, etc.: to form the foundation or basis of something" or "to provide

11

the background or context for something"); *Underlie*, Webster's Third New International Dictionary 2489 (2002) ("to lie or be situated under" or "to exist as a claim or security superior and prior to another") (cleaned up); *see also* Restatement of the Law of Liability Insurance § 39 (2019) ("When liability insurance is structured in layered towers, a lower level of insurance that must be paid out before a higher layer of coverage is obligated to pay is referred to as the 'underlying insurance.'")

To summarize, underlying primary insurance constitutes "[a]ny insurance policy" not listed in the Schedule of Underlying Insurance and when the policy's obligation to pay for Rieth-Riley's losses existed underneath in priority before the coverage of the insurance policies listed in the Schedule of Underlying Insurance. On the basis of this pleading and the insurance policies, TCS's policy just so qualifies. First, TCS's policy with Allied wasn't listed in the Schedule of Underlying Insurance in Rieth-Riley's policy. Second, with Rieth-Riley identified as an additional insured on TCS's policy, TCS's policy was primary and was required to be exhausted before Rieth-Riley's insurance policy with Allied was triggered. To this point, the Subcontract between Rieth-Riley and TCS [1-4] provided that all "subcontractor insurance policies provided . . . shall be primary and shall be vertically exhausted before any Rieth-Riley [] policies are required to respond to a loss and/or liability." Allied effectively signed off on this arrangement when it issued its policy to TCS and added Rieth-Riley as an additional insured (under Endorsement No. 26), expressly stating that coverage afforded to additional insureds "will be primary to, and non-contributory with, any other insurance available to that person or organization where required of [TCS] by written contract or agreement" [1-3].

The court remains unconvinced by Allied's arguments that Section V.H. in Rieth-Riley's policy imposed additional requirements before another insurance policy could qualify as underlying primary insurance. Section V.H. provides that Allied relied on Rieth-Riley's representations about its underlying primary insurance when it issued Rieth-Riley its policy [1-1]. It also prescribes specific obligations for Rieth-Riley to maintain its underlying primary insurance.[3] However, the failure to comply with these conditions would not invalidate the policy, so Section V.H. clarifies, though Allied's liability would not exceed that which would have applied absent that failure. At this pleading stage, it would be difficult to say Rieth-Riley failed to comply when, in fact, by operation of the Subcontract, it not just procured but maintained the underlying primary insurance rather than let it lapse or become invalid. More important, nothing in the text of Section V.H. imposed any temporal requirement on what might qualify as underlying primary insurance. And, if the concern is that there was a modification of underlying primary insurance—what the policy in Section V.H. calls a "material change" in the terms of underlying primary insurance—merely because Rieth-Riley added underlying primary coverage by virtue of being named an additional insured on TCS's policy, Allied could hardly claim ignorance of Rieth-Riley's inclusion when it endorsed this very thing on TCS's policy.

The court is likewise unpersuaded by Allied's other argument that this interpretation produces absurd results by automatically converting all insureds on Rieth-Riley's underlying primary insurance into insureds under Rieth-Riley's excess policy. First, that isn't what happened here, as this case concerns the insureds under TCS's policy that happened to afford Rieth-Riley

---

[3] For instance, Rieth-Riley was required to keep its underlying primary insurance "valid and in full force and effect" and not cancel it, let it expire, or rescind it without it being replaced with Allied's agreement; and not materially change its terms without Allied's agreement.

underlying primary insurance as an additional insured. Second, an insured on what became Rieth-Riley's underlying primary insurance would not automatically become an insured on Rieth-Riley's excess policy with Allied unless that insured also "qualif[ied] as an insured in every policy of **underlying excess insurance**." [1-1]. This could not happen without Allied's knowledge or consideration because all underlying excess insurance was listed in the Schedule of Underlying Insurance [1-1 at 5], which Allied reviewed before issuing its policy.

       3. *TCS's Anti-Stacking Provision.*

Allied alternatively invokes the anti-stacking provision in TCS's policy to contend that it too caps the amount of coverage available to Rieth-Riley under Rieth-Riley's excess policy with Allied. Rieth-Riley responds by arguing that Allied cannot use the anti-stacking provision in this separate policy with TCS to alter Rieth-Riley's rights under its own excess policy. Rieth-Riley also argues that TCS's anti-stacking provision is not triggered because Rieth-Riley's excess policy was "specifically written in excess of" TCS's policy. Sompo echoes these same two points.

In reply, Allied takes up the "written in excess" argument but offers little substance on how TCS's policy language might subvert Rieth-Riley's recovery under its own excess policy when that recovery has been sought, not as an additional insured under TCS's policy, but as an insured under its own excess policy. According to the complaint (its allegations assumed as true today except to the extent they might conflict with the plain language of these policies), Allied denied Rieth-Riley $5 million in coverage under Rieth-Riley's excess policy with Allied, not under TCS's policy based on the Rieth-Riley's status as an additional insured. The settlement agreement tends on this early record to make such allegations even more plausible, for Allied seems to have paid $5 million (the coverage limit under the TCS policy) on behalf of TCS, with the only plausible

14

source of the $10 million coming from Rieth-Riley's excess policy. Rieth-Riley pleaded as much [1 ¶ 41]. Allied has not offered a cogent reason why today's debate should be adjudged under TCS's anti-stacking provision rather than the provisions within Rieth-Riley's excess policy, when these policies otherwise have been pleaded as part of (and accepted in argument by Allied as existing in) two "towers," albeit the TCS policy still plausibly underlying [1 ¶¶ 22-23, 31, 41]. In the absence of any legal authority or developed argument to the contrary, the court cannot apply TCS's anti-stacking provision to defeat Rieth-Riley's claim at this early stage. And because Rieth-Riley has presented a plausible claim based on one theory, the court need not reach Rieth-Riley's alternative argument that its excess policy was specifically written to be in excess of the TCS policy. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) (claim survives when supported by at least one legal theory).

Thus in sum, Rieth-Riley has pleaded a plausible claim for coverage of the additional $5 million notwithstanding the anti-stacking provisions. As pleaded, TCS's insurance policy with Allied, which named Rieth-Riley as an additional insured and provided primary coverage to Rieth-Riley with Allied's consent, could be considered underlying primary insurance under Rieth-Riley's policy with Allied. If so, TCS's policy with Allied would not be considered "other insurance" under Rieth-Riley's policy, and the anti-stacking provision would not be triggered. Accordingly, Rieth-Riley's complaint alleges a plausible claim that Allied's refusal to pay $5 million for the *Detert* settlement was a breach of contract.

B.  *Breach of the Duty of Good Faith and Fair Dealing.*

Indiana law recognizes an implied duty of good faith and fair dealing in all insurance contracts. *See Erie Ins. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). An insurer has an obligation

15

to refrain from "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* at 519. To prove bad faith, a plaintiff must show through clear and convincing evidence that an insurer "had knowledge that there was no legitimate basis for denying liability." *Freidline v. Shelby Ins.*, 774 N.E.2d 37, 40 (Ind. 2002); *see also Monroe Guar. Ins. v. Magwerks, Corp.*, 829 N.E.2d 968, 976 (Ind. 2005). A plaintiff must plausibly plead the nature of this claim but need not conform to a higher pleading standard of proving an insurer's mental state at this phase of the litigation. *See* Fed. R. Civ. P. 9(b); *HMV Indy I, LLC v. HSB Specialty Ins.*, 413 F.Supp.3d 801, 807 (S.D. Ind. 2019).[4]

Rieth-Riley's complaint asserts that Allied breached its legal duty by unfoundedly refusing to pay policy proceeds and using an unfair advantage to pressure Rieth-Riley into settlement [1 ¶ 73]. Rieth-Riley alleges that, because of Allied's alleged breach of duty, it suffered monetary losses and incurred unnecessary attorney fees [*id.* ¶ 76]. Allied argues that Rieth-Riley's bad faith claim should be dismissed because it fulfilled its contractual obligations under Rieth-Riley's policy by contributing $10 million towards the *Detert* settlement. Alternatively, Allied says the claim should be dismissed because there is a good faith dispute as to the amount of coverage that it was required to provide.

Allied's first argument fails because Rieth-Riley states a plausible claim for breach of contract—and one, at this stage, that runs counter to the idea that Allied fulfilled all its contractual obligations to its insured. Its second argument fares no better because Rieth-Riley plausibly pleads

---

[4] Fed. R. Civ. P. 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake," whereas "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

16

a basis for bad faith. In its complaint, Rieth-Riley alleges the details of its monetary losses [1 ¶ 18, 27, 76], the amount [*id.* ¶ 18, 27, 76], method of loss [*id.* ¶ 27], provisions of the policy [*id.* ¶ 32, 39], and the details that Allied relied on in denying full coverage [*id.* ¶ 41, 50]. Rieth-Riley also includes allegations about Allied's mental state. It describes Allied as "intransigen[t]" [*id.* ¶ 54] and operating unreasonably with a "conscious and intentional effort" [*id.* ¶ 75] to injure Rieth-Riley. Allied may ultimately be able to show that this was all just a good faith dispute, not least when it paid $10 million for Rieth-Riley and $5 million for TCS to resolve the underlying negligence suit, but that question of proof versus today's question of pleading are vastly different. *See Twombly*, 550 U.S. at 556; *Skinner v. Metro. Life Ins.*, 829 F. Supp.2d 669, 678 (N.D. Ind. 2010) (arguments for dismissing bad faith claim are more appropriate at later stages). The court must deny the motion to dismiss the bad faith claim accordingly.

## CONCLUSION

For these reasons, the court DENIES Allied's motion to dismiss [19].

SO ORDERED.

September 30, 2025                                    *s/ Damon R. Leichty*
                                                      Judge, United States District Court